UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HARRY NORST,

                                        Plaintiff,

v.                                                          7:13-CV-00912
                                                            (DNH/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

Law Offices of Steven R. Dolson               STEVEN R. DOLSON, ESQ.
*Counsel for Plaintiff*
126 North Salina Street, Suite 3B
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN                  PETER W. JEWITT, ESQ.
United States Attorney for the                Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                  STEPHEN P. CONTE, ESQ.
Social Security Administration                Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT AND RECOMMENDATION**</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) (2013)

and Northern District of New York Local Rule 72.3(d).  This case has proceeded in accordance

with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 8 and 10.)[1] Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently 62 years old with a birth date of November 1, 1951. (T. at 113.)[2] He completed one year of college. *Id.* at 146. Plaintiff's past jobs have included scheduling manager, paper machine operator, warehouse worker, dispatcher, and plumber/sprinkler fitter. *Id.* at 28-30, 42, 162-167, 195. Plaintiff alleges continuous disability since March 1, 2010, due to hearing loss and dizziness post craniotomy and spinal meningitis, asthma, depression, blood clots, and hiatal hernia. *Id.* at 145.

Plaintiff applied for disability insurance benefits on December 16, 2010. *Id.* at 113. The application was denied on March 14, 2011. *Id.* 55-62. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 6, 2011. *Id.* at 63. The hearing was held on March 28, 2012. *Id.* at 24-44. On April 16, 2012, the ALJ issued a decision finding that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. *Id.* at 11-18. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 28, 2013. *Id.* at 1. Plaintiff commenced this action in the

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system.

[2] Citations identified as "T" reference the Administrative Transcript and the page numbers set forth in those documents.

United States District Court for the Northern District of New York on July 25, 2013. (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2013). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id.* at § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2013)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the
> claimant shows that he is not working at a "substantial gainful
> activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two,
> the SSA will find nondisability unless the claimant shows that he

3

has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ made the following findings:

1.    "The claimant meets the insured status requirements of the Social Security Act through December 31, 2015." (T. at 13.)

2. "The claimant has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date [of disability] (20 CFR 404.1571, *et seq*.)." *Id*.

3. "The claimant has the following severe impairments: hearing loss in the left ear, status post craniotomy, and a history of vertigo (20 CFR 404.1520 (c))." *Id*.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id*. at 15.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot balance, he must avoid working at unprotected heights, and he can tolerate no more than moderate (office-type) noises in a work environment." *Id*.

6. "The claimant is capable of performing past relevant work as a dispatcher (DOT# 249.167-014). This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565)." *Id.* at 18.

7. "The claimant has not been under a disability, as defined in the Social Security Act from March 1, 2010, through the date of this decision (20 CFR 404.1520(f))." *Id.*

## IV.   THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred at step four of the sequential analysis by determining

he is able to return to his past relevant work as a dispatcher (DOT # 249.167-014). The Selected

Characteristics of Occupations ("SCO") lists the Dispatcher position as having a need for

frequent use of hearing, and Plaintiff contends that he would be unable to maintain an occupation

that requires frequent hearing because of his severe hearing loss. *Id.* at 7; Dkt. No. 8 at 4.

Plaintiff also claims that because the ALJ failed to apply the correct legal standard in assessing

his credibility, his residual functional capacity ("RFC") analysis is not supported by substantial evidence. (Dkt. No. 8 at 5.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 10.)

## V.    WHETHER THE ALJ ERRED IN DETERMINING THAT PLAINTIFF COULD PERFORM HIS PAST RELEVANT WORK AS A DISPATCHER GIVEN HIS HEARING LOSS

### A.    The ALJ's Decision Regarding Plaintiff's Hearing Loss

In his decision, the ALJ determined, based upon diagnoses by Dr. Page and Dr. Rivera, that Plaintiff had a severe hearing impairment in his left ear, although not a hearing impairment or a combination of impairments that meets or medically equals the severity of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526). (T. at 13.) In fact, Dr. Page described Plaintiff's complaint when she first saw him on July 29, 2010, as a ringing and hearing loss in his right ear following a craniotomy, and she made no mention of a left ear hearing loss. *Id*. at 334. In his report, Dr. Rivera diagnosed Plaintiff as having a partial hearing loss in his right ear leaving him with mild-to-moderate limitations with hearing from a distance, with no mention of the hearing in Plaintiff's left ear. *Id*. at 456-57.

The ALJ revealed in his discussion of Plaintiff's RFC that he was well aware that Licensed Audiologist Karen S. Borawski, M.A, CCC-A, who did Plaintiff's audiology testing and whose opinion the ALJ gave great weight, had concluded based on the testing that Plaintiff had normal hearing for speech in his left ear with a severe high frequency sensorineural loss, and that Plaintiff had a moderate loss for speech in his right ear, along with a severe high frequency,

primarily sensorineural hearing loss in that ear.[3]  *Id*. at 17.  The ALJ also knew that Plaintiff

required a hearing aid in his right, not his left ear.  *Id*. at 40.  Given the foregoing, the Court will

assume that the ALJ's description of Plaintiff's severe hearing loss as being in his left ear was a

scrivener's error, that the ALJ intended to refer to the hearing loss in Plaintiff's right ear which

required him to use a hearing aid, and that the error is harmless since the ALJ's decision would

be the same despite the error.  *See Plato v. Colvin*, No. 1:12-CV-319-DBH, 2013 WL 5348603,

at *10, 2013 U.S. Dist. LEXIS 13661, at *27 (D. Maine Sept. 24, 2013) (use of the word

"spondylosis" rather than "spondylitis" was a scrivener's error that caused no harm to plaintiff);

*see also Armstrong v. Colvin*, No. 6:11-CV-4172-VEH, 2013 WL 1180305, at *3, 2013 U.S.

Dist. LEXIS 36854, at *11 (N.D. Ala. Mar. 18, 2003) ("[a] scrivener's error is harmless when the

ALJ's decision would be the same despite the error.").

The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all

exertional levels, but with certain nonexertional limitations including that "he can tolerate no

more than moderate (office-type) noises in the work environment."[4]  *Id*. at 15.  The ALJ

concluded that Plaintiff was capable of performing his past work as a dispatcher (DOT #

249.167-014).  *Id*. at 18.

---

[3]  In addition, the Disability Report - Field Office, which was part of the administrative
hearing record, identified Plaintiff's hearing related medical condition as "[l]oss of hearing in
right ear."  (T. 20, 145.)

[4]  An individual's RFC is defined as what an individual can still do despite his or her
limitations after taking into account his or her medically determinable impairments that limit his
or her ability to perform work-related tasks.  *See* 20 C.F.R. § 404.1545(a)(1)-(2).

**B.     Medical Records Regarding Plaintiff's Hearing Loss**

Plaintiff's medical records reveal that he underwent a right-sided redo retrosigmoid craniotomy microvascular decompression on March 8, 2010, to address a recurrent right hemifacial spasm. (T. at 199.)  On March 17, 2010, Plaintiff was re-admitted to the hospital for a cerebrospinal fluid leak and was subsequently diagnosed with postoperative spinal meningitis. *Id*. at 211.  At an April 8, 2010, follow up visit with Neurosurgeon Eric M. DeShaies, M.D., Plaintiff reported that the hearing in his right ear had slowly decreased since the surgery. *Id*. at 252.  On May 6, 2010, Dr. DeShaies explained to Plaintiff and his wife that it was possible that his auditory nerve had been injured during the surgery. *Id*. at 251.

Plaintiff's personal physician, Elwin Stillman, M.D., referred him to Ear, Nose and Throat specialist, Diana Page, D.O., for evaluation of his hearing loss and problems he was having with his balance. *Id*. at 136.  Dr. Page's note from Plaintiff's July 26, 2010, appointment indicates that Plaintiff had ringing in his right ear, described as "[p]ositive steady, loud right tinnitus, high pitched," and right ear hearing loss after the surgery. *Id*. at 334.  Upon examination, Dr. Page found Plaintiff's hearing to be "grossly normal for conversation." *Id*.  Dr. Page assessed tinnitus unspecified, vertigo of central origin, hearing loss unspecified, and injury facial nerve." *Id*.  Dr. Page's notes from a follow-up visit on August 17, 2010, reported no change in Plaintiff's symptoms. *Id*. at 338.  At that visit, Dr. Page assessed vertigo of central origin, tinnitus subjective, injury facial nerve, and sensorineural hearing loss, asymmetrical. *Id*. Dr. Stillman also diagnosed Plaintiff as having vertigo. *Id*. at 415.

Plaintiff was seen for a hearing evaluation by Ms. Borawski on August 8, 2010.  *Id*. at

366-373.  Conclusions of the evaluation were that the "[r]esults indicated normal hearing for

speech with a severe high frequency sensorineural hearing loss in the left ear and a moderate loss

for speech with moderately-severe high frequency sensorineural hearing loss for speech in the

right ear."  *Id*. at 366.  Ms. Borawski's recommendations for Plaintiff included that:

> 1. He should have continued otological and medical management as directed by
> his physician.  2. He should have hearing aid evaluation for the right ear as his
> needs warrant and at his physician's discretion.  3. He should have annual hearing
> evaluations.  4. His physician should consider CDP or physical therapy to further
> assess/treat his dysequilibrium [*sic*].  5. He should utilize good listening strategies
> and assistive devices as his needs warrant.  6. He should utilize ear protection in
> noise.

*Id*.

Plaintiff was fitted with a hearing aid for his right ear the latter part of 2010.  *Id*. at 543,

584.  According to Dr. Page's May 12, 2011, note on a follow-up visit by Plaintiff for tinnitus,

Plaintiff reported that his hearing aid helped with his tinnitus, and he had no new hearing

complaints.  *Id*.  Again Dr. Page found Plaintiff's hearing to be grossly normal for conversation.

*Id*. at 585.  Dr. Page's assessment at the time of the May 12, 2011, visit was that Plaintiff had

asymmetrical sensorineural hearing loss, sensory bilateral hearing loss, tinnitus subjective, and

vertigo aural and otogenic other.  *Id.*

When Ms. Borawski saw Plaintiff for a hearing evaluation and hearing aid check on

October 5, 2011, Plaintiff was again found to have normal hearing for speech with a severe high

frequency sensorineural hearing loss in his left ear and a moderate loss for speech with a severe

high frequency, primarily sensorineural hearing loss in his right ear.  *Id*.  at 543.  With his left ear

masked and the hearing aid in his right ear, Plaintiff's speech reception threshold improved 35

dB, and his speech discrimination improved 12% to 92% at a conversational level, a 20 dB lower

presentation level. *Id*. Ms. Borawski concluded that Plaintiff's hearing aid was providing

significant benefit at his right ear. *Id*.

Plaintiff was referred to Roberto Rivera, M.D. of Industrial Medical Associates, P.C., for

an internal medicine examination by the Division of Disability Determination on January 14,

2011. *Id*. at 452-457. Dr. Rivera found that with his hearing aid in his right ear, Plaintiff was

able to hear from a distance of eight to ten feet without undue difficulty and had not had to ask

Dr. Rivera to repeat himself at all. *Id*. at 455. Dr. Rivera found of note that secondary to

Plaintiff's impaired hearing, there were mild-to-moderate limitations in hearing from a distance

and that Plaintiff required a hearing aid in his right ear. *Id.* at 457.

### C. Plaintiff's Hearing Testimony Regarding His Hearing Loss and Past Employment as a Dispatcher

Testimony regarding Plaintiff's hearing at his March 28, 2012, hearing before the ALJ

was minimal. Plaintiff testified only that without the hearing aid, his right ear is worthless. *Id*. at

32. According to Plaintiff, when he lies on his left ear without his hearing aid, he cannot hear his

wife's alarm go off. *Id*. Plaintiff also testified that without the hearing aid, the ringing in his

right ear is deafening and "kind of wants to drive you crazy." *Id*. at 32, 34-35.

When asked about his previous job as a dispatcher, Plaintiff testified that he spent a lot of

time on the phone and working the computer to secure loads for trucks, and that he had some

interface with customers, including going to lunch. *Id*. at 29. According to Plaintiff, after the

craniotomy, he looked for work that did not require driving, including work as a dispatcher, but

no one hired him. *Id.* at 36-37.

**D.     Analysis**

The ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but that he has certain nonexertional limits including that "he can tolerate no more than moderate (office-type) noises in a work environment." (T. at 15.)  In his step four analysis, the ALJ found that Plaintiff could perform his past employment as dispatcher.  *Id*. at 18.  Plaintiff does not dispute the nonexertional limitation regarding his tolerance of work-place noise in the RFC.  (Dkt. No. 8 at 3-4.)  Further, Plaintiff acknowledges that the noise level 3 designation given the occupation of dispatcher in the SCO 249.167-014 falls within the nonexertional limitation in the RFC.  *Id*. at 4.  Plaintiff's objection to the ALJ's determination that he can perform the duties of dispatcher is that SCO 249.167-014 identifies the occupation of dispatcher as one that requires "frequent hearing," described therein as hearing from one-third to two-thirds of the work day, and that the ALJ failed to provide adequate discussion in his RFC analysis of Plaintiff's ability to perform an occupation that requires frequent hearing.  *Id*. Disputing the ALJ's finding that he has a severe hearing impairment in only one ear, Plaintiff claims that he has severe bilateral hearing loss, and that "[i]t goes to reason that a claimant with the severe impairment of hearing loss would, by the very nature of the impairment be unable to maintain an occupation which requires frequent hearing."  (Dkt. No. 8 at 4.)

The Court notes that the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to past relevant employment.  *Berry v. Schwieker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1567, 416.967 (2012)  (disability claimant bears

the burden of proving that he cannot return to his past relevant work, either as it is performed in the national economy, or as he actually performed it).[5]

At the hearing, Plaintiff's counsel responded in the affirmative when asked if the record was complete and indicated Plaintiff had no objection to the exhibits. (T. 26-27.) While the ALJ has an affirmative duty to develop the administrative record where there are gaps in a claimant's medical records, Plaintiff makes no claim that the ALJ failed to do so in this case. *See Perez,* 77 F.3d at 47 ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record . . . even when the claimant is represented by counsel."); *see also* 20 C.F.R. § 404.1512(d). A gap exists in the record when the ALJ bases a conclusion on evidence which is absent from the record or not fully developed within the record. *See Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Because a review of the entire administrative record fails to uncover any obvious gaps with regard to

---

[5] As noted above, Plaintiff's past work as a dispatcher largely involved talking on the phone and working on a computer and included some interface with customers. (T. at 39.) DOT # 249.167-014 describes the job title of Dispatcher, Motor Vehicle as:

> Assigns motor vehicles and drivers for conveyance of freight or passengers: Compiles list of available vehicles. Assigns vehicles according to factors, such as length and purpose of trip, freight or passenger requirements, and preferences of user. Issues keys, record sheets, and credentials to drivers. Records time of departure, destination, cargo, and expected time of return. Investigates overdue vehicles. Directs activities of drivers, using two-way radio. May confer with customers to expedite or locate missing, misrouted, delayed, or damages merchandise. May maintain record of mileage, fuel used, repairs made, and other expenses. May establish service or delivery routes. May issue equipment to drivers, such as handtruck, dollies, and blankets. May assign helpers to drivers. May be designed according to type of motor vehicle dispatched as Dispatcher, Automobile Rental (automotive ser.); Dispatcher, Tow Truck (automotive ser.).

Plaintiff's hearing loss, the Court finds that the ALJ was not required to seek additional information. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In assessing a claimant's RFC, the ALJ must consider all relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and a claimant's subjective evidence of symptoms. *See* 20 C.F.R. § 404.1545. The ALJ is entitled to rely upon the opinions of examining and non-examining State agency medical consultants since such consultants are deemed to be qualified experts in the field of social security disability. *See Grewen v. Colvin*, No. 1:11-CV-829 (FJS), 2014 WL 1289575, at *7, 2014 U.S. Dist. LEXIS 41260, at *20 (N.D.N.Y. Mar. 27, 2014).

The Court's factual review of the ALJ's non-inclusion of frequency of hearing as a nonexertional limitation in Plaintiff's RFC and his determination that Plaintiff could perform the job of dispatcher is limited to whether substantial evidence in the record supports the ALJ's decision. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado,* 805 F. Supp. at 153. The Court must afford the ALJ's determination considerable deference and may not substitute its own judgment for that of the ALJ "even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

The Court finds that the ALJ has set forth the crucial factors justifying his findings with regard to the scope of the nonexertional limitations related to Plaintiff's hearing loss in the RFC. The Court also finds that the RFC with regard to Plaintiff's hearing loss and the determination

that Plaintiff's hearing impairment does not prevent him from working as a dispatcher are supported by substantial evidence. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (ALJ must set forth with sufficient specificity the crucial factors justifying his findings to allow the courts to determine whether the decision is supported by substantial evidence).

A review of the ALJ's decision shows that he considered all of the medical records and medical opinions regarding Plaintiff's hearing loss and described the weight given them in determining Plaintiff's RFC. The ALJ considered and gave great weight to the opinion of Dr. Page, who on July 26, 2010, examined Plaintiff for ringing in his right ear and right ear hearing loss immediately following the craniotomy and found his hearing to be "grossly normal for conversation" despite the complaints of right ear ringing and hearing loss. (T. at 16; 334.) The ALJ acknowledged that Dr. Page made the same finding on other occasions when she examined Plaintiff. *Id*. at. 18.

The ALJ also considered and gave great weight to the results of audiology testing done by Ms. Borawski that revealed puretone thresholds with "normal/elevated normal levels sloping to a severe high frequency loss in the left [ear] and a moderate to severe loss in the right ear." *Id*. at 17. The ALJ noted Ms. Barowski's finding that speech discrimination was good in Plaintiff's left ear and fair-to-good in his right ear, and that with his hearing aid, Plaintiff's right ear speech discrimination improved from 12% to 92% at conversational level. *Id*. The ALJ also gave great weight to Ms. Barowski's conclusion that: (1) Plaintiff had normal hearing for speech with a severe high frequency, primarily sensorineural loss in the left ear and a moderate loss for speech with a severe high frequency, primarily sensorineural hearing loss in the right ear; and (2) Plaintiff's hearing aid provided significant benefit to the hearing in his right ear. *Id*.

The ALJ considered and also gave great weight to the opinion of Dr. Rivera who had opined that Plaintiff would have mild-to-moderate limitations with hearing from a distance. *Id.* at 17. Dr. Rivera had also noted that Plaintiff had no undue difficulty hearing him in conversation from a distance of eight to ten feet and did not have to ask him to repeat himself. *Id.* at 455.

Plaintiff has not pointed to any evidence in the administrative record supporting his conclusory assertion that it stands to reason that someone with his hearing impairment would be unable to perform an occupation requiring frequent hearing. (Dkt. No. 8 at 4.) Plaintiff has not pointed to any evidence showing that despite normal hearing for speech in his left ear, the improvement in his right ear speech reception threshold and discrimination with his hearing aid, and the ability to understand speech from eight to ten feet away, he would be unable to engage in the frequent hearing required of a dispatcher even with the severe high frequency sensorineural hearing loss in both ears. *See Berry,* 675 F.2d at 467; *see also* 20 C.F.R. §§ 404.1567, 416.967 (2012) (claimant has the burden of proving he cannot return to past relevant employment). Moreover, the medical records and opinions regarding Plaintiff's hearing contained in the administrative record are largely consistent with regard to Plaintiff's hearing and provide substantial evidence that, given Plaintiff's normal hearing for speech in his left ear and the correction in his right ear hearing with his hearing aid, he would have been able to maintain the frequency of hearing required of a dispatcher.[6]

---

[6] The ALJ did not specifically address Plaintiff's administrative hearing testimony regarding his hearing loss in his determination of Plaintiff's RFC or finding that he could perform the job of dispatcher. However, since Plaintiff's testimony regarding his hearing loss was limited to the ringing in his right ear and inability to hear with his right ear when he was not wearing his hearing aid, the testimony was not probative as to Plaintiff's ability to engage in

Based upon the foregoing, the Court finds that the ALJ's determination that Plaintiff would be able to perform the job duties of a dispatcher with his level of hearing impairment is supported by substantial evidence.

## VI.    WHETHER THE ALJ ERRED IN HIS ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A.    Credibility Assessments by the ALJ

"It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs*., 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).  In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account.  20 C.F.R. § 416.929 (2014).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2014); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996).[7]  The ALJ is required to consider all of the evidence of record in making his credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3) (2014)).

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.

---

frequent hearing when he is wearing his hearing aid.  (T. at 32, 34-35.)

[7] There is no Lexis citation for this source.

*Id.* If no impairment is found that could reasonably be expected to produce pain or other symptoms, the claimant's pain or other symptoms cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain or other symptoms are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen,* 2014 WL 1289575, at *4 (while a "claimant's subjective complaints are an important part of the RFC calculus . . . "[subjective symptomatology by itself cannot be the basis for a finding of disability . . . ., and [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. §§ 423(d)(5)(A); 20 C.F.R. §404.1529(b); SSR 96-7p, 1996 WL 374186.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence. *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or

symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3) (2014)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, 96-CV-9435, 1999 WL 185253, at *5, 1999 U.S.

Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte*, 728 F.2d at 599; *Ferraris*, 728 F.2d at 582)). "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record. *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621 (JSR)(FM), 2003 WL 470572, at *10, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718 (MBM), 1998 WL 430547, at *6 ,1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

**B.     Analysis**

Plaintiff contends that the ALJ failed to follow the proper legal standard for assessing his credibility regarding his subjective complaints of pain (and presumably other symptoms) because, while the ALJ laid out the two-step process, he failed to apply it properly.  (Dkt. No. 8 at 6.)  Plaintiff does not question the ALJ's first-step conclusion that his medically determinable impairments could reasonably be expected to cause the balance problems and falls, problems focusing his eyes, hearing problems, vertigo issues, and short bouts of nausea and headaches about which Plaintiff testified at his hearing.  (T. 15-16.)

Plaintiff claims that the ALJ failed to apply the proper analysis in the second step.  The second step failure, according to Plaintiff, was that rather than set forth his analysis of Plaintiff's "symptoms, including pain, and the extent to which [Plaintiff's] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. § 404.1529(a), the ALJ merely concluded that while "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . .[,] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Dkt. No. 8 at 6; T. at 16.)   By doing so, Plaintiff contends, the ALJ has precluded meaningful review of his credibility assessment, which is a critical factor in determining Plaintiff's RFC.  (Dkt. No. 8 at 6.)

In *Crofoot v. Comm'r of Soc. Sec'y*, No. 1:12-CV-521 (GLS/ESH), 2013 WL 5493550, at *11, 2013 U.S. Dist. LEXIS 142035, at *23 (N.D.N.Y. Sept. 30, 2013), Magistrate Judge Earl S.

Hines wrote that "[c]redibility-determination boilerplate such as *not credible to the extent inconsistent with the above residual functional capacity* is, at best, gibberish insusceptible to meaningful judicial review," and noted the existence of "numerous cases criticizing this gobbledygook for various reasons, the most serious being that it smacks of determining residual functional capacity before even considering a claimant's subjective testimony."[8]  However, the court also noted that "reviewing courts do not demand perfect decisions, and '[w]hile this sort of boilerplate is inadequate, by itself, to support a credibility finding, . . . its use, does not make a credibility determination invalid.'" *Id.* (quoting *Adams v. Astrue*, 880 F. Supp. 2d 895, 906 (N.D. Ill. 2012) (internal citations omitted).

In *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 318-19 (W.D.N.Y. 2013), the court determined that the ALJ's credibility assessment was supported by substantial evidence where the ALJ had assessed the plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite using boilerplate language that the plaintiff's complaints were "inconsistent with the above residual functional capacity."  *See also Luther v. Colvin*, No. 12-CV-6466 (MAT), 2013 WL 3816540, at *7-8, 2013 U.S. Dist. LEXIS 102062, at *21 (W.D.N.Y. July 22, 2013) (holding that the credibility assessment was proper where the ALJ found claimant's alleged symptoms "inconsistent with the above residual functional capacity" and where ALJ's finding was consistent with the entire record); *Briscoe v. Astrue*, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012) ("Read in context, however, this statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility.")

---

[8]  Plaintiff has argued in this case that the ALJ "put the proverbial cart before the horse" in concluding that Plaintiff was not credible to the extent his statements were not in line with the RFC.  (Dkt. No. 8 at 6.)

The ALJ in this case clearly considered the medical evidence and opinions in the administrative record regarding Plaintiff's hearing loss, vertigo, balance problems, nausea and dizziness and the limiting effects of those problems. (T. at 16-17.) The ALJ's review of medical opinions included Dr. Rivera's opinion that Plaintiff's erosions in functioning were not as limiting as he claimed, and Ms. Borawski's opinion that while Plaintiff had some limitations in his hearing, they were not as limited as Plaintiff alleged. (T. 16-17.) The ALJ also considered Plaintiff's hearing testimony regarding his pain and other physical symptoms with regard to his balance, eye issues, hearing problems, vertigo issues, and nausea and headaches.[9] Id. at 15-16. In addition, the ALJ considered Plaintiff's testimony regarding his attempts to find work after being laid off from his employment as a sprinkler fitter, and his daily activities, including activities around the house, and exercise using a Wi.[10] The ALJ's determination based

---

[9] Plaintiff testified that he had problems with blurred vision and problems with depth perception because his right eye was not working well. (T. at 30.) He also testified that his eyes ached after about five minutes of work on the computer. Id. at 31. However, Plaintiff has not identified any objective medical evidence supporting his subjective complaint of symptoms regarding his eyes, nor has the Court found medical evidence in the record. Plaintiff's testimony regarding his nausea and headaches was that he had nausea only once or twice a week for fifteen to twenty minutes and headaches only a couple of times a week for a half hour to an hour. Id. at 33-34. Plaintiff also testified regarding his inability to sit for more than an hour without getting up and walking because of leg pain (worse in his left leg than the right) due to his blood clots. Id. at 43. The ALJ also noted in his decision that Plaintiff had complained of pain in his lower extremities from time to time, but that according to his medical records, the pain had completely left after Plaintiff stopped taking a certain medication. Id. at 14. Plaintiff has pointed to no objective medical evidence supporting Plaintiff's claim with regard to leg pain, and the Court has found none.

[10] Plaintiff testified that after the craniotomy, he would have attempted to go back to his job as a sprinkler fitter had he been given the opportunity. Id. at 36. He looked unsuccessfully for work and interviewed for positions as a dispatcher, traffic manager, warehouse manager, and materials manager. Id. at 37. At home, Plaintiff used a Wi to work on his balance, watched TV, fixed meals, drove with some limitations, did laundry, and used a snow blower. Id. at 39.

upon that review was that "[i]n terms of the claimant's alleged limitations, there is some indication that his impairments erode his functioning, but not to the degree he claims."[11] *Id*. at 16.

In reviewing the ALJ's credibility determination, the Court has considered Plaintiff's good work history as evidence of his credibility. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("a good work history is probative of credibility"). However, a good work history is "just one of many factors" appropriately considered in assessing credibility. *Id*. at 502. After considering the entire administrative record, the Court concludes that the objective medical evidence supports the ALJ's determination that Plaintiff's functioning has not been eroded to the degree he claims and finds that the ALJ's finding that Plaintiff can perform the job of dispatcher is supported by substantial evidence.

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 87 (2d Cir. 1993)

---

[11] The Court notes that despite finding that Plaintiff's subjective complaints were exaggerated, the ALJ largely credited Plaintiff's complaints with regard to his balance difficulties and incorporated Dr. Rivera's assessment that because of those balance issues, Plaintiff should not be exposed to unprotected heights. *Id*. at 15, 17.

(citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed.R.Civ.P. 72.


Dated: September 8, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge